IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEUDY ALBAN OSIO, et al.
Judgment Creditors,

1:25-MC-00390 (LGS)(SN)

V.

NICOLAS MADURO MOROS, et al.
Judgment Debtors.

_____/

**OPPOSITION TO PETROCEDENO'S OBJECTION TO REPORT & RECOMMENDATION ON THE PLAINTIFFS' MOTION FOR WRIT OF EXECUTION**

**INTRODUCTION**

Petrocedeno—sanctioned for usurping democracy in Venezuela—offers meritless objections ("Objections") to Judge Netburn's thoughtful Report & Recommendation ("R&R"). The R&R recommends that Plaintiffs (the "Alban Plaintiffs"), victims of torture and murder by Maduro and his agents, be granted a writ of execution on Petrocedeno's blocked assets pursuant to the Terrorism Risk Insurance Act ("TRIA"). The R&R rests on Plaintiffs' detailed showing that Petrocedeno is Maduro's agent and instrumentality. It further provides that Petrocedeno will be afforded ample additional[1] opportunity to challenge that showing before any of its assets are turned over. And, because there are other terrorism-victim claimants who already have writs on the same assets, and subject to an interpleader before this Court,[2] "[t]he [Alban] Plaintiffs' writ of execution on Petrocedeno's accounts simply reserves [the Alban] Plaintiffs' place 'in line' . . . while [that]

---

[1] Petrocedeno opposed the Alban Plaintiffs' motion for writ here, as well as the one that resulted in the issuance of the writ in Florida.
[2] *In re claims against the Valdero-Petrocedeno Account*, 2020-mc-249 (S.D.N.Y.).

1

case proceeds." R&R at 15. Petrocedeno nevertheless objects. But as shown below, Petrocedeno rehashes rejected arguments, mischaracterizes the R&R, and provides no basis to reject it.

## ARGUMENT

### I. The R&R Does Not Deprive Petrocedeno of An Opportunity to be Heard

Petrocedeno's due process argument is the same as it made below. *Compare* Letter Brief, D.E. 28, at 1-2 *with* Objections, D.E. 31. Accordingly, the R&R is reviewed for clear error. *See Living the Dream Films, Inc. v. Aloris Entm't, LLC*, 2021 U.S. Dist. LEXIS 234396 (S.D.N.Y. Dec. 7. 2021), *2-3 ("When a party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the report and recommendation strictly for clear error."). Here there is no error, let alone clear error.

As the R&R explains, the Court will afford Petrocedeno an opportunity to be heard, and will "consider[] Petrocedeno's evidence contesting the agency-or-instrumentality issue," **before** ordering any blocked assets be turned over to Plaintiffs. R&R at 14 n.2. Petrocedeno's "due process" argument, therefore, is not whether it will be heard, but rather whether it has a right to multiple bites at the apple. As the R&R correctly holds, it does not.

Petrocedeno wrongly argues that Judge Netburn "fails to address Petrocedeno's due process concerns." Objections, D.E. 31, at 2. But in fact, the R&R discusses, and explicitly rejects, Petrocedeno's due process argument:

> The Court must provide Petrocedeno with "notice and a fair hearing where both sides can present evidence," including the "opportunity to dispute [the third party's] classification as an agency or instrumentality under TRIA. Stansell II, 771 F.3d at 727. As the Eleventh Circuit has held, the Fifth Amendment's guarantee of due process entitles a third party to these procedural mechanisms "before execution, though not necessarily before attachment." Id. at 729. Petrocedeno will have ample opportunity to respond to Plaintiffs' factual proffer and contest the Court's

2

> preliminary agency-or-instrumentality finding with its own evidence during the regular course of this proceeding, including at the final turnover stage.

R&R at 14-15.

Petrocedeno fails to confront the R&R's analysis. It offers no argument that the precedent the R&R cites—*Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014) ("*Stansell II*")—erred. Indeed, the procedure *Stansell II* endorses is exactly how this Court handles TRIA writs. For example, claimant Caballero moved—*ex parte* and under seal—for writs of execution against the blocked assets of Petrocedeno. *See In re claims against the Valdero-Petrocedeno Account*, 2020-mc-249, D.E. 6; D.E. 57; D.E. 110. This Court granted those motions. *See* D.E. 67, D.E. 92, D.E. 118. Similarly, in *Stansell v. Revolutionary Armed Forces of Columbia (FARC)*, 1:16-mc-00405-ALC (S.D.N.Y.), the *Stansell* claimants moved *ex parte* for a writ on Petrocedeno's blocked assets. *See id.*, D.E. 111 ("Plaintiffs' Ex Parte, Expedited Motion for Issuance of Post-Judgment TRIA Writ of Execution & Memorandum of Law"). The Court granted the *Stansell* plaintiffs' motion. D.E. 114. Petrocedeno offers no reason to deviate from that procedure.

Petrocedeno's argument that it will be prejudiced if not afforded additional pre-writ briefing fails, first because its assets already are (1) blocked by OFAC, (2) subject to Caballero's writ, and (3) Stansell's, and (4) a writ that the Alban Plaintiffs obtained in *Alban Osio v. Maduro Moros*, 2021-cv-20706 (S.D. Fla.), D.E. 674, D.E. 675.[3] One more writ will not harm Petrocedeno. Its speculation that other terrorism judgment holders may leverage the Alban writ to pursue their own writs is irrelevant, as there is already a line of claimants seeking Petrocedeno's assets.

---

[3] The Alban Plaintiffs maintain that this writ is valid, but for the avoidance of any doubt in these New York proceedings, seek a New York issued writ.

Moreover, it is false: the Alban Plaintiffs obtained their writ based not upon their Florida writ, but based upon an independent factual proffer. R&R at 13. Any other terrorism plaintiff would have to do the same. By contrast, the delay that Petrocedeno seeks could materially prejudice the Alban Plaintiffs. *See Stansell II,* 771 F.3d at 729 ("During the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible").

Finally, Petrocedeno's argument that Local Rule 6(d) bars *ex parte* relief misses the mark. Judge Netburn received extensive letter briefing (D.E. 20, D.E. 22, D.E. 28) on the appropriate procedure, addressing the concern that the Court be afforded reasons for *ex parte* relief before granting it. In the case Petrocedeno cites, the Court denied *ex parte* relief without prejudice, so that claimants could explain their basis for seeking it. *See Miller v. Cartel*, 2024 U.S. Dist. LEXIS 3046, at *5 (S.D.N.Y. Jan. 5, 2024). Here, that has already been addressed. As such, this Court need not elevate form above substance. *See Somlyo v. J Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1049 (2d Cir. 1991) (District courts can depart from Local Rules). Indeed, district courts often reject arguments, like PetroCedeno's, seeking to prevail based on such "a technicality." *Phoenix of Albany, LLC v. Cnty. of Albany*, 2023 U.S. Dist. LEXIS 21838, at *6 (N.D.N.Y. Feb. 9, 2023).

## II.     The R&R Correctly Concluded that Plaintiffs Met Their Burden

### A.     The R&R Applies the Correct Standard

Petrocedeno's argument that the R&R "applied an incorrect standard" ignores the R&R. First, Petrocedeno wrongly asserts that the R&R required only that the Plaintiffs "present" a factual proffer (Objections, at 4), but in fact, the R&R holds that merely ***presenting*** a factual proffer is not enough: "[t]he proffer must be ***sufficient*** for the Court . . . to make the required '***finding*** as to whether [the] TRIA indeed permits those assets to be seized" (R&R at 13, quoting *Levinson v.*

4

*Kuwait Fin. House (Malay) Berhad*, 44 F.4th 91, 97 (2d Cir. 2022) (emphasis added)). Second, the R&R contains precisely the findings that Petrocedeno implies (Objections, at 4) are absent: "this Court has made the required TRIA agency-instrumentality finding." R&R at 13.

Third, Petrocedeno blithely asserts that the R&R does not explain the basis for its findings. Objections, at 4. But the R&R fully explains that Judge Netburn found that (1) Plaintiffs' expert—Douglas G. Farah, a "subject matter expert on terrorism in Latin America who has advised the Department of Defense and U.S. government agencies the illegal conduct of the Maduro Regime"—is credible, R&R at 11; (2) as demonstrated by "specific examples" furnished by Mr. Farah, "Petrocedeno has been central to Maduro's money laundering apparatus," R&R at 12; and (3) "Petrocedeno has supported a broader money laundering network orchestrated by PDVSA on behalf of Maduro and the Cartel," including specific instances, attested to by Mr. Farah, in which Petrocedeno was used as a vehicle for illicit financial flows on behalf of Maduro and the Cartel, R&R at 12. After reciting this evidence and making clear that it was credible, the Court appropriately held that Plaintiffs had met their burden. There is nothing to Petrocedeno's argument that Judge Netburn acted in derogation of *Levinson*.

### B. The R&R Properly Addresses the Blocking Date

As the R&R correctly explains, "Plaintiffs have presented a sufficient factual proffer that . . . Petrocedeno was operating as an agency or instrumentality as of January 28, 2019." R&R at 13 n.2. Petrocedeno's counterargument, that the Alban Plaintiffs' post-January-2019 evidence is insufficient (Objections, at 6) is beside the point, because ***post***-January-2019 evidence is not relevant to the inquiry the Second Circuit mandates, which assesses agency/instrumentality status

5

as of the date the assets at issue were blocked (in this case, January 28, 2019). *Havlish v. Taliban*, 152 F.4th 339, 364-65 (2d Cir. 2025).

Moreover, Petrocedeno misses Mr. Farah's point that Petrocedeno has acted continuously as Maduro's agency and instrumentality from before, during and after the date its assets were blocked. Farah Decl., D.E. 24-1, at 7-12. Notably, Mr. Farah specifically explained that Petrocedeno was an agency/instrumentality the day it was blocked, agreeing "with the conclusion of OFAC [as of the date of blocking] that entities under PDVSA, including Petrocedeno, have become tools of Maduro and his inner circle of political, military and family cronies." *Id.* at 13.[4]

            **C.**     **The Report Correctly Analyzes Plaintiffs' Expert Evidence**

Petrocedeno's quibbles with Plaintiffs' evidence are unpersuasive.

*First*, Petrocedeno wrongly suggests that the evidence against it is merely "generalities." Objections, at 6. To the contrary, Mr. Farah explains that "I am familiar with specific instances where Petrocedeno was used as a vehicle for illicit financial flows on behalf of Maduro and the Cartel of the Suns," and "I have also reviewed and analyzed reports and financial information, including reports from confidential sources, as well as publicly available reports, related to Petrocedeno and its use in schemes to evade U.S. and international sanctions and to launder money derived from narcotics trafficking and other illegal activities." Farah Decl., D.E. 25-1, at 10-11. He then enumerates scams by Petroccedeno executives that would "have been approved by Maduro, who would have benefited from the bribery schemes" personally. *Id.* at 9-10.

---

[4] Petrocedeno's discussion of Maduro's legitimacy is a red herring. The question is whether Petrocedeno was an agency or instrumentality of Maduro—which has nothing to do with whether Maduro was the legitimate President of Venezuela.

*Second,* Petrocedeno suggests that its link to Maduro is too remote to support agency-or-instrumentality status.  But as shown above, Petrocedeno laundered money for Maduro himself.  In the case Petrocedeno cites, *Doe v. Taliban*, 2024 U.S. Dist. LEXIS 56759 (S.D.N.Y. Mar. 27, 2024), the expert did "not argue that there is any direct link between [the agencies and instrumentalities] and judgment debtor," whereas here, Plaintiffs' expert explains that "Maduro, through PDVSA and directly, controls Petrocedeno." ECF 25-1, at 12.

*Third,* Petrocedeno briefly suggests that it is not responsible for the actions of its executives.  But "[u]nder New York law . . . an employee's tortious acts are imputable to the employer if done while the servant was doing his master's work, no matter how irregularly." *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (quotation and citations omitted).  Here, Petrocedeno's money laundering was not the ultra vires act of employees deviating from corporate policy for personal reasons—it **was** Petrocedeno's corporate objective, set by its executives at Maduro's behest.  Farah Decl, D.E. 25-1, at 12.  This is particularly true for Petrocedeno doling out its lucrative procurement contracts for payoffs that benefited Maduro (*id.*)–-i.e., an employee "doing his master's work," albeit "irregularly." See *Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 145 F. Supp. 2d 356, 358 (S.D.N.Y. 2001) (mens rea of CEO guilty of bribery attributable to employer).

*Fourth*, Petrocedeno's passing *Touhy* objections lack merit. To begin, this barely-mentioned argument is waived.  *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 113050, *6 (S.D.N.Y. Aug. 9, 2013) ("Issues mentioned in a perfunctory manner . . . are deemed waived").  Moreover, Petrocedeno, as a private party, has no standing to assert *Touhy* regulations. *See United States ex rel. Liotine v. CDW Gov't, Inc.*, 2012 WL 2807040, at *1, 6 (S.D. Ill. July 10, 2012) ("a

7

private party[] lack[ed] standing to claim a violation of the [*Touhy*] regulations at issue"). In the case Petrocedeno cites, the government, not a private litigant, asserted a *Touhy* violation. *See Outlaw v. City of New York*, 2024 U.S. Dist. LEXIS 209615, at *9-14 (S.D.N.Y. Nov. 19, 2024) (U.S. Marshal Service's moving to enforce DOJ *Touhy* regulations).

In any event, the *Touhy* regulations are inapplicable because Mr. Farah's declaration does not contain any "official information" subject to *Touhy* under Department of Defense or Department of Homeland Security regulations. 32 C.F.R. § 97.3; 6 C.F.R. § 5.41. Mr. Farah's declaration makes clear that he did not rely on any information in government control or tied to official duties. He explains: "My opinions are based on my education, training and approximately 38 years of experience in Latin America and also based upon my research, field work and academic study. . . . I have field work on these particular issues for a period of more than 10 years, with document collection and interviews spanning more than eleven countries." *Id.* at 5-6. His vast body of work as a private journalist and investigator does not become "official information" merely because the government has sometimes sought his expertise. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 75, 80 (D.D.C. 2007) (no authority to block all testimony of former employee's "personal opinions and observations").

*Fifth*, Petrocedeno's one-sentence argument that TRIA does not reach Petrocedeno's assets because Petrocedeno's assets are not assets "of" a terrorist party (D.E. 31, at 8) should be deemed waived. *Chevron*, 2013 U.S. Dist. LEXIS 113050, at *6. In any event, the Second Circuit has rejected this view, holding that "the fact that Plaintiffs obtained their underlying judgments against *Iran*, not specifically against *Alavi* or *650 Fifth Ave. Co.*, does not prevent Plaintiffs from attaching [the latter's] properties under the TRIA if, *inter alia*, [they] qualify as agencies or instrumentalities

8

of Iran under the TRIA." *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 132 (2d Cir. 2016); *Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 156 (2d Cir. 2018) ("Section 201(a) of TRIA allows a plaintiff to execute a judgment on blocked assets of a terrorist party, ***or its agency or instrumentality***, to satisfy a judgment against the terrorist party" (emphasis added)).

## CONCLUSION

For the foregoing reasons, the R&R should be adopted in its entirety.

Respectfully submitted on December 30, 2025.         */s/ Jaime D. Guttman*
                                                      jaime@scale.law
                                                      Scale Law Partners, LLC
                                                      777 Brickell Avenue, Suite 500
                                                      Miami, FL 33131
                                                      (786) 273-9033 (Main)

                                                      *Counsel for Judgment Creditors*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the word limit of this Court's Individual Rule II.B.1 and Local Civil Rule 7.1(c). According to the word-processing system used to prepare this document, the total word count for all printed text, exclusive of the material omitted pursuant to Individual Rule II.B.1, is 2,400.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on December 30, 2025 through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

/s/ Niall D. Ó Murchadha

Niall D. Ó Murchadha
Lundin PLLC
405 Lexington Ave, 26th Floor
New York, New York 10174
Telephone: (929) 564-5583
NOMurchadha@LundinPLLC.com
Attorneys for Plaintiffs