UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                             :

MEUDY ALBAN OSIO et al.,                :

                     Plaintiffs,   :
                                            :          25 Misc. 390 (LGS)

            -against-              :
                                            :          **OPINION & ORDER**

NICOLAS MADURO MOROS et al.,     :

                    Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, United States District Judge:

This Opinion & Order addresses the Report and Recommendation, dated December 5, 2025, of Magistrate Judge Sarah Netburn (the "Report"). The Report recommends granting Plaintiffs' motion for a writ of execution on assets purportedly owned by Petrocedeño S.A. ("Petrocedeño"), subject to Plaintiffs' filing a revised writ. The Report also recommends appointing a special process server to serve and levy the writ. Petrocedeño filed objections to the Report.[1] For the reasons below, the Report is substantially adopted in full.

## I.    BACKGROUND

Plaintiffs are judgment creditors of Defendants Nicolás Maduro Moros ("Maduro"), Fuerzas Armada Revolucionarias de Columbia, the Cartel of the Suns (the "Cartel") and others who "orchestrat[ed] the kidnapping, torture, and murder of decedent Fernando Alberto Albán in 2018." *Albàn Osio v. Moros*, No. 21 Civ. 20706, 2023 WL 5019877, at *1 (S.D. Fla. July 19, 2023), *report and recommendation adopted sub nom. Osio v. Moros*, No. 21 Civ. 20706, 2023

---

[1] White & Case LLP ("White & Case") originally filed objections on behalf of Petrocedeño. White & Case subsequently withdrew as counsel, and the team of León Cosgrove Jiménez, LLP and Kellner Herlihy Getty & Friedman LLP filed a letter notifying that it had been "designated as permanent counsel [to entities including Petrocedeño] under the United States-recognized administration of President Delcy Rodriguez." Petrocedeño stands on the objections previously filed through White & Case.

WL 5015435 (S.D. Fla. Aug. 7, 2023). The United States District Court for the Southern District of Florida entered default judgment for Plaintiffs and against Defendants. *See Osio*, 2023 WL 50154435, at *1. Plaintiffs registered that judgment in the Southern District of New York and now seek to enforce the judgment against bank accounts purportedly belonging to Petrocedeño, a Venezuelan state-owned entity and non-party to the Southern District of Florida proceeding. The accounts are held by J.P. Morgan Chase Bank, N.A., Sumitomo Mitsui Banking Corp. and TCP Petcoke Corporation. Petrocedeño opposed, seeking an opportunity to be heard before disposition of Plaintiffs' motion.

The Report recommends granting Plaintiffs' motion for a writ of execution, subject to Plaintiffs' filing a revised writ that complies with specified provisions of New York law, and appointing a special process server. Specifically, the Report concludes that Plaintiffs' proposed writ substantially complies with New York law but does not satisfy all of the procedural requirements for a writ of execution under CPLR § 5230(a). The Report also concludes that Plaintiffs have met the requirements for a writ of execution under the Terrorism Risk Insurance Act of 2002 (the "TRIA"), 116 Stat. 2322. The Report thus recommends directing Plaintiffs to file a revised writ of execution including all information that CPLR § 5230(a) requires. The Report also recommends appointing a special process server to serve and levy the writ. Petrocedeño timely filed objections (addressed below), to which Plaintiffs responded.

## II.    STANDARD

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). Even when exercising de

novo review, "[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety."[2] *Morris v. International Brotherhood of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order); *Bulgari v. Bulgari*, No. 22 Civ. 5072, 2024 WL 4345580, at *2 (S.D.N.Y. Sep. 30, 2024).

To the extent the parties do not object to portions of a magistrate judge's report and recommendation, the report is reviewed for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). Similarly, where no specific written objection is made, "the district court can adopt the report without making a de novo determination." *United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997); *accord Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 345 (S.D.N.Y. 2019) ("A district court evaluating a magistrate judge's report may adopt those portions of the report to which no specific written objection is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.").

## III.    DISCUSSION

Petrocedeño raises three objections to the Report: (1) that the Court lacks subject matter jurisdiction; (2) that the Report improperly denies Petrocedeño the opportunity to challenge the writ of execution before its issuance and (3) that the Report improperly concludes that Plaintiffs have met the requirements for a writ of execution under the TRIA. None is persuasive. For the reasons discussed below, Petrocedeño's objections are overruled, and on de novo review, the corresponding portions of the Report are adopted.

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted and all alterations are adopted.

The remainder of the Report, to which Petrocedeño does not object, is reviewed for clear error. *Nambiar*, 158 F.4th at 359. Finding no clear error on the face of the record, the Report is adopted in full.

### A.      Subject Matter Jurisdiction

Petrocedeño argues that the Court lacks subject matter jurisdiction to issue a writ of execution on assets purportedly belonging to Petrocedeño. The Report concludes that subject matter jurisdiction exists because the TRIA "creates an independent basis for the court to exercise subject matter jurisdiction" over the blocked assets of a terrorist party's agency or instrumentality, and because Plaintiffs have met their burden to demonstrate that Petrocedeño is an agency or instrumentality of a terrorist party at this stage of proceedings. *Havlish v. Taliban*, 152 F.4th 339, 362 (2d Cir. 2025), *petition for reh'g en banc denied*, 170 F.4th 100 (2d Cir. 2026).

The Report's conclusions about subject matter jurisdiction are adopted. For the reasons below, Plaintiffs have met their initial burden to establish that Petrocedeño is an agency or instrumentality of a terrorist party. Under *Havlish*, the court has subject matter jurisdiction in light of this conclusion. Petrocedeño concedes that *Havlish* forecloses its contrary argument. However, the Report erred in not addressing subject matter jurisdiction before addressing other issues. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013); *accord Li v. Great Care, Inc.*, No. 24 Civ. 7401, 2025 WL 2419708, at *3 (S.D.N.Y. Aug. 21, 2025).

### B.      Due Process

Petrocedeño argues that the Report improperly denies Petrocedeño the opportunity to challenge Plaintiffs' motion in violation of the Fifth Amendment Due Process Clause. This

argument is unavailing because due process does not require that Petrocedeño have the opportunity to oppose Plaintiffs' writ of execution before it is issued.

### 1.    Due Process Legal Standard

The Fifth Amendment Due Process clause requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" before deprivation of a protected interest. *See Hadwan v. U.S. Dep't of State*, 139 F.4th 209, 225 (2d Cir. 2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  To determine what process is required in a given case, a court balances "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; and (3) the government's interest, including the possible burdens of alternative procedures." *Barrows v. Becerra*, 24 F.4th 116, 140 (2d Cir. 2022).  This test is "flexible . . . and takes account of individual circumstances." *Black v. Decker*, 103 F.4th 133, 148 (2d Cir. 2024).

The Second Circuit has not addressed whether, under the Due Process Clause, a court must afford a purported judgment debtor the opportunity to challenge a writ of execution before it is issued.  Several courts in this District, including in cases related to this action, have issued writs of execution ex parte under New York law and the TRIA.  *See, e.g.*, *In re Claims Against the Valero-Petrocedeno Account*, No. 20 Misc. 249, Dkt. No. 92 (S.D.N.Y. May 4, 2022); *id.* Dkt. No. 118 (S.D.N.Y. Dec. 9, 2024); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 16 Misc. 405, Dkt. No. 114 (S.D.N.Y. Dec. 15, 2020).

The Eleventh Circuit has held that property owners are not necessarily constitutionally entitled to a hearing before initial issuance of a writ of execution.  *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 729 (11th Cir. 2014) (discussing post-judgment "attachment"); *see Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 828 (N.Y. 2009) (stating

that, under New York law, "attachment" is a pre-judgment proceeding, in contrast with article 52 post-judgment enforcement).  In *Stansell*, the Eleventh Circuit considered the *Mathews* factors and concluded that (1) the consequences of issuing a writ weigh in favor of a right to be heard before issuance; (2) the requirement that a district court make factual findings about a party's agent-or-instrumentality status lessened the risk that a writ would be issued in error, a factor that weighs against a pre-issuance right to be heard and (3) the importance of ensuring adequate satisfaction of judgments against terrorist parties weighs strongly against a pre-issuance right to be heard.  771 F.3d at 728-29.  The Eleventh Circuit applied these principles to conclude that initial issuance of a writ of execution did not require judgment debtors to have notice or an opportunity to be heard.  *See, e.g.*, *id.* at 739, 741 (holding that due process was satisfied despite issuance of writ without debtor's notice or opportunity to be heard).  That analysis, though not binding here, is persuasive.

### 2.     Application

The Report correctly concludes that, under the circumstances of this case, due process does not require that Petrocedeño be afforded the right to be heard before issuance of a writ of execution.  The Report primarily relies on the Eleventh Circuit's reasoning in *Stansell* as persuasive authority.  The Report applies those principles to conclude that, before issuance of a writ of execution under New York law and the TRIA, a debtor is not entitled to be heard -- but a debtor is entitled to be heard at a later stage of proceedings, including before final turnover of assets.

On de novo review, the Report is adopted.  A writ of execution against a garnishee under New York law initiates proceedings but does not entitle a judgment creditor to take possession of the subject property.  *See Koehler*, 911 N.E.2d at 828 ("Article 52 authorizes a judgment

6

creditor . . . when the property sought is not in the possession of the judgment debtor himself, to commence a special proceeding against a garnishee who holds the assets.")  As the Eleventh Circuit held in *Stansell*, due process does not require notice and an opportunity to be heard in advance of this preliminary step.  771 F.3d at 741.

Petrocedeño argues that it is prejudiced by the initial issuance of a writ of execution because issuance requires a preliminary determination that the owner of the assets is an agency or instrumentality of a terrorist party, a finding that "could be used to justify copycat writs in other jurisdictions."  This argument is unpersuasive.  Under Second Circuit law, before securing a writ of execution under the TRIA, "a district court must make findings as to whether TRIA indeed permits those assets to be seized."  *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 97 (2d Cir. 2022); *see also Stansell*, 771 F.3d at 729 (stating that requirement that district court "determine that the property owner . . . is an agency or instrumentality of the judgment debtor terrorist party" weighs against pre-writ right to be heard).  The Report's reasoning on a preliminary factual proffer, adopted here, does not require other courts to make the same findings at a preliminary stage or conclusively.  Petrocedeño's due process objection is overruled.

### C.    TRIA

Petrocedeño argues that the Report incorrectly concludes that Plaintiff has met the requirements for a writ of execution under the TRIA.  The Report's conclusion, which is reviewed de novo, is adopted.  Petrocedeño's objections are overruled.

### 1.    TRIA Legal Standard

The TRIA states that:

[I]n every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not

immune under [28 U.S.C. § 1605(a)(7)], the blocked assets of that terrorist party (*including the blocked assets of any agency or instrumentality of that terrorist party*) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

*See* TRIA § 201(a) (emphasis added).  "[A]n entity is an agency or instrumentality of a terrorist party under the TRIA if it "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party." *Havlish*, 152 F.4th at 362.  "[A]n entity is an agency or instrumentality of a terrorist party under the TRIA as long as it satisfies at least one of these three conditions." *Id.*  An entity is subject to attachment or execution under the TRIA only if it is an agency or instrumentality of a terrorist party as of the date the entity's assets were blocked.  *See id.* at 364-65.

### 2. Application

The Report concludes that Plaintiffs have met their initial burden to show that the relevant accounts are subject to attachment and execution under the TRIA.  Specifically, the Report concludes that (1) Plaintiffs obtained a judgment against a terrorist party for a claim based on an act of terrorism; (2) the value of the assets on which Plaintiffs seek to execute does not exceed Plaintiffs' compensatory damages; (3) the subject accounts are blocked assets and (4) at this stage, Plaintiffs have met their burden to demonstrate that Petrocedeño was an agency or instrumentality of a terrorist party as of the date Petrocedeño's assets were blocked.  With respect to the fourth conclusion, the Report concludes that Petrocedeño is an agency or instrumentality of Defendants Maduro and the Cartel for two reasons:  first, because Petrocedeño officials have been implicated in bribery schemes benefiting Maduro and other Defendants and second, because Petrocedeño has supported a money laundering network orchestrated by Petrocedeño's corporate parent, Petroleos de Venezuela, S.A. ("PDVSA"), on behalf of Maduro

8

and the Cartel.  The Report credits the declaration of Plaintiffs' expert, Douglas C. Farah, in reaching these conclusions.

Petrocedeño contests only the fourth conclusion.  Specifically, Petrocedeño argues that the Report errs in concluding that Petrocedeño was an agency or instrumentality of a terrorist party as of the date Petrocedeño's assets were blocked, which was January 28, 2019.  This argument is unavailing because the Report correctly finds, as a preliminary matter, that Plaintiffs have met their burden to demonstrate that Petrocedeño was an agency or instrumentality of a terrorist party as of January 28, 2019.  This factual finding is adopted on de novo review.

The Report credits Mr. Farah's conclusion that Petrocedeño is an agency or instrumentality of Maduro and/or the Cartel.  Mr. Farah notes that on January 28, 2019, the Office of Foreign Assets Control ("OFAC") blocked the assets of PDVSA, Petrocedeño's corporate parent.  OFAC stated that PDVSA had "long been a vehicle for corruption," describing bribery and money laundering schemes in the 2010s for the benefit "of corrupt Venezuelan officials and businessmen."  Press Release, Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594 [perma.cc/74BS-KE9C].  Mr. Farah notes the existence of similar bribery and money laundering schemes implicating Petrocedeño officials both before and after January 28, 2019, and circumstances suggesting that these schemes are connected with or benefited Maduro through PDVSA.  For instance, Mr. Farah describes instances before the blocking date in which two Petrocedeño officials received millions of dollars in bribes in exchange for assisting contractors selected by PDVSA.  Mr. Farah also states that, after the blocking date, PDVSA continued to support Maduro through money laundering, and notes that the current president of Petrocedeño is a career PDVSA official.  Mr. Farah thus

9

describes continuous conduct, both before and after the blocking date, supporting a finding that Petrocedeño supported Maduro through bribery and money laundering activities as of January 28, 2019.

These factual findings, preliminarily adopted in the Report and here, support agency or instrumentality status as of January 28, 2019.  For instance, first, Petrocedeño's participation in bribery and money laundering schemes for the benefit of Maduro constitutes a "means through which a material function of the terrorist party is accomplished."  *Havlish*, 152 F.4th at 362. Second, and similarly, through those activities, Petrocedeño "provided material services to, on behalf of, or in support of the terrorist party."  *Id.*  Either of these findings is sufficient to conclude that Petrocedeño is an agency or instrumentality of Maduro.  *See id.* ("[A]n entity is an agency or instrumentality of a terrorist party under the TRIA as long as it satisfies at least one of these three conditions.").

Petrocedeño's contrary arguments are unavailing.  First, Petrocedeño argues that the Report improperly accepts Plaintiffs' factual proffer in lieu of making factual findings as required by *Levinson*.  *See* 44 F.4th at 98.  This argument is unpersuasive because the Report permissibly adopts arguments made in Plaintiffs' factual proffer as preliminary factual findings.

Second and relatedly, Petrocedeño argues that the Report improperly relies on facts adjudicated in other cases for their truth.  This argument is unpersuasive because the Report engages with the evidence Plaintiffs submitted.  As discussed above, this evidence, including the declaration of Mr. Farah, is sufficient to support the Report's findings.

Third, Petrocedeño argues that the Report does not tailor its findings to the blocking date of January 28, 2019.  Specifically, Petrocedeño argues that, in January 2019, the United States de-recognized the Maduro Government and instead recognized an opposition government, which

had *de jure* control over the Ad Hoc Board that oversees PDVSA and its subsidiaries as of the blocking date. Petrocedeño argues that Mr. Farah presents no allegations describing Petrocedeño's relationship to Maduro on or after the blocking date. These arguments are unpersuasive because Mr. Farah specifically opined that he agrees with OFAC's January 28, 2019, blocking decision that subsidiaries of PDVSA, including Petrocedeño, "have become tools of Maduro and his inner circle," and further described conduct both before and after the blocking date that supports that opinion.

Fourth, Petrocedeño argues that Plaintiffs' expert relies on "vague and conclusory statements about Petrocedeño's corporate parent, PDVSA," as opposed to Petrocedeño itself. This argument is unavailing because, as discussed above, the Report credits Mr. Farah's specific factual conclusions about Petrocedeño, or otherwise tying PDVSA to Petrocedeño, in reaching the agency or instrumentality finding.

Finally, Petrocedeño argues that Mr. Farah's declaration should be stricken because he did not demonstrate that he has complied with Department of Defense and Department of Homeland Security regulations requiring agency approval before providing written testimony about information acquired through official duties. *See* 32 C.F.R. §§ 97.7, 97.9 (Defense); 6 C.F.R. § 5.45 (Homeland Security). This argument is unpersuasive because the present record does not suggest that Mr. Farah's declaration contains information acquired through his official duties. To the contrary, Mr. Farah's declaration states that his opinions are based on his "education, training and approximately 38 years of experience in Latin America and also based upon my research, field work and academic study." While Mr. Farah's declaration does note that he is a "recognized Subject Matter Expert" for U.S. Government agencies, Petrocedeño points to no specific information in Mr. Farah's declaration that Petrocedeño contends he obtained

11

through these official duties.  Petrocedeño's objections are overruled, and the Report's

conclusion that Plaintiffs have met the TRIA requirements for initial issuance of a writ of

execution is adopted.

## IV.    CONCLUSION

For the reasons stated above, Petrocedeño's objections are **OVERRULED**, and the

Report is substantially **ADOPTED** in full, except as noted below.  Plaintiffs' motion to expedite

consideration of this motion is **DENIED** as moot.

By **August 12, 2026**, Plaintiffs shall file a revised proposed writ of execution that

(1) specifies all of the information required by CPLR § 5230(a), including the interest rate on

Plaintiffs' judgment and the last known addresses of the judgment debtors and (2) includes the

total amount of the Petrocedeño accounts, if known.  The Court will direct issuance of the writ

after Plaintiff files the revised writ.[3]

The Court hereby appoints One World Judicial Services [Phone No. (631) 667-8263],

with offices at 172 Brook Ave, Suite A, Deer Park, NY 11729 and 26 Hill St, #113,

Southampton NY 11768, as an additional authorized server to serve and levy the court-ordered

writ(s) of execution in this action on financial institutions, with affidavits of service to be filed.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 25.

Dated:  August 5, 2026
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[3] This procedure is different from that recommended in the Report, which recommends entering an order directing the Clerk to issue the writ of execution in its revised form.